**Migdalia HEREDIA, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
**Defendant.**

**Civ. No. 90–1773 (JAF).**

United States District Court,
D. Puerto Rico.

Feb. 5, 1992.

Raymond Rivera–Esteves, Juan A. Hernandez Rivera & Assoc., San Juan, P.R., for plaintiff.

José Vázquez-García, Asst. U.S. Atty., Daniel F. López–Romo, U.S. Atty., D. Puerto Rico, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

On January 23, 1991, this court issued a Remand Order in which we found that the Secretary of Health and Human Services' ("Secretary") decision denying plaintiff Migdalia Heredia's application for disability benefits was not based on substantial evidence. We remanded the action to the Secretary for additional proceedings. Specifically, we ordered that a residual functional capacity assessment be done to determine to what extent plaintiff's medical impairments affected her ability to function in employment settings. We also recommended that a vocational expert give testi-

mony explaining the exertional requirements for a school cook, the position formerly held by plaintiff, so as to determine whether, in fact, she could return to her former position as the ALJ had originally found. Finally, we ordered the ALJ to make detailed findings as to plaintiff's subjective complaints of pain as mandated by *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986).

Almost nine months later, on October 18, 1991, plaintiff moved the court to issue a final judgment in the above-mentioned remand order. Plaintiff seeks the issuance of this judgment in order to apply for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1] Plaintiff also filed an application for attorney's fees. The Secretary opposed plaintiff's motion arguing that our January 1991 remand order constituted a final judgment and, as such, rendered untimely plaintiff's fee application, since it was filed more than thirty days after the remand order became final and unappealable. *See* 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G). The government also argued that even if plaintiff's application is found to be timely, no decision can be made as plaintiff has not as yet attained the status of "prevailing party." On November 20, 1991, we ordered plaintiff to file with the court any administrative disposition of plaintiff's claim subsequent to our January 1991 remand order. In response to our order, plaintiff's counsel informed

the court that: he had erroneously represented that there had been an administrative determination; a further administrative hearing was held before the ALJ on December 3, 1991; and no decision had as yet been rendered. Thereafter, while the parties' motions were pending before this court, on January 30, 1992, plaintiff filed a copy of the ALJ's decision dated December 19, 1991, in which it was determined that plaintiff was entitled to a period of disability and disability insurance benefits commencing March 16, 1989.[2] (Docket Document No. 17).

After reviewing the three most recent United States Supreme Court decisions discussing the issues before us, *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989); *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990); *Melkonyan v. Sullivan*, —— U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), recent lower court case law interpreting these decisions, and the parties' positions argued in their memoranda of law, we *grant* plaintiff's motion for an issuance of judgment and will *issue* a final judgment, since the administrative proceedings have terminated and plaintiff has returned to the court with the Secretary's final decision.[3]

We begin with the relevant language of section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g):

> der this subsection.... The party shall also allege that the position of the United States was not substantially justified.
> 28 U.S.C.A. § 2412 (West 1978 and 1991 Supp.).

**1.** The relevant language of the EAJA reads as follows:

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses of attorneys, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
> (B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows the party is a prevailing party and is eligible to receive an award un-

**2.** On June 28, 1990, shortly after plaintiff filed for review of the administrative determination in this court, she filed a second application for a period of disability and disability insurance benefits. This second application was denied both initially and upon reconsideration. The plaintiff then filed a request for a hearing on November 30, 1990. After the January 1991 remand from this court, both actions were consolidated for the administrative hearing. The ALJ determined the onset date as being March 19, 1989, rather than May 30, 1987, and awarded benefits as of this date.

**3.** We assume here that plaintiff is not challenging the Secretary's determination that the onset date was March 16, 1989, not May 30, 1987, the date presented in the first application.

### (g) Judicial review

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. [T]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. [*sentence four*].[4] [T]he court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. [*sentence six*]. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.

42 U.S.C. § 405(g).

In the first of the United States Supreme Court cases, *Sullivan v. Hudson*, the Court held that,

> [w]here a court orders a remand to the Secretary in a benefits litigation and re-

tains continuing jurisdiction over the case pending a decision from the Secretary which will determine the claimant's entitlement to benefits, the proceedings on remand are an integral part of the "civil action" for judicial review, and thus attorney's fees for representation on remand are available subject to the other limitations of the EAJA.

490 U.S. at 892, 109 S.Ct. at 2258. In *Hudson*, it was the Court of Appeals for the Eleventh Circuit that vacated the Secretary's decision and ordered the district court to remand the action for further proceedings. *Id.* at 880–81. The Supreme Court analyzed the legislative history of the EAJA, as well as the structure of administrative proceedings and judicial review under section 205(g) and commented that,

> [t]he detailed provisions for the transfer of proceedings from the court to the Secretary and for the filing of the Secretary's subsequent findings with the court suggest a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency action under the Administrative Procedure Act.

*Id.* at 885, 109 S.Ct. at 2254. The Court also discussed the nature of district court remand orders where factual or legal errors have been found. According to the Court, these orders: will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed; will be subject to further judicial review and reversal if not followed since deviation from the court's order is itself legal error; and will allow the Court to "retain jurisdiction over the action pending the Secretary's decision and its filing with the court." *Id.* at 885–86, 109 S.Ct. at 2254.

The Supreme Court then discussed two points relating to the application of the EAJA which emerged from the analysis of the judicial review mechanisms of section

---

**4.** Because the Supreme Court used *sentence four* and *sentence six* to demarcate the two types of remands contemplated by Congress in the statu-

tory language of section 205(g), we simply highlight the relevant language using the same terms.

205(g) benefit determinations. *Id.* at 886–87, 109 S.Ct. at 2254–55. First, the Court noted that normally the claimant will not attain the status of "prevailing party" until the post-remand administrative proceedings are completed. Remand is not enough in and of itself to attain "prevailing party" status. Second, the Court recognized that a party can only apply for attorney fees under the EAJA "within thirty days of final judgment in the action," 28 U.S.C. § 2412(d)(1)(B), and that often there will be "no final judgment in a claimant's civil action for judicial review until the administrative proceedings on remand are complete." The Court, thus, recognized that,

> [f]or purposes of the EAJA, the Social Security claimant's status as a prevailing party and the final judgment in her "civil action ... for review of agency action" are often completely dependent on the successful completion of the remand proceedings before the Secretary. Moreover, the remanding court continues to retain jurisdiction over the action within the meaning of the EAJA, and may exercise that jurisdiction to determine if its legal instructions on remand have been followed by the Secretary.

*Id.* at 887–88, 109 S.Ct. at 2255. The Court also looked to its own past decisions interpreting other fee-shifting statutes where administrative proceedings "are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing the fees," *Id.* at 888, 109 S.Ct. at 2255, in support of its conclusion that certain subsequent administrative proceedings are "part and parcel" of the judicial action. *See Pennsylvania v. Delaware Valley Citizen's Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (Clean Air Act); *New York Gaslight Club, Inc. v.*

*Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (Title VII).

The next term, the Supreme Court decided *Sullivan v. Finkelstein.* The precise issue before the Court was whether the Secretary could immediately appeal a district court order which effectively "declar[ed][ ] invalid regulations that limit the kinds of inquiries that must be made to determine whether a person is entitled to disability insurance benefits and remand[ed][ ] a claim for benefits to the Secretary for consideration without those restrictions." 496 U.S. at ——, 110 S.Ct. at 2661. The Court held that such an order could be considered a "final decision" and was therefore appealable under 28 U.S.C. § 1291. Germane to the matter before us is the Court's discussion of the facts of the case in light of the structure of section 205(g). According to the Court, the lower court's remand order, reversing the Secretary's determination that claimant was not disabled and remanding for further consideration of respondent's medical condition, "essentially invalidated as inconsistent with the Social Security Act, the Secretary's regulations restricting spouses' disability insurance benefits to those claimants who can show that they have impairments with 'specific clinical findings that are the same as ... or medically equivalent to' one of the listed impairments, 20 C.F.R. § 404.-1578(a)(1) 1989."[5] 496 U.S. at ——, 110 S.Ct. at 2663. The Court, therefore, found that the lower court's decision was a judgment as described in sentence four of section 205(g)—allowing the court to remand for a rehearing—and was thus final and immediately appealable under sentence eight of the statute. In the Court's own words:

**5.** The Court had earlier noted that the Secretary's regulations for determining whether a surviving spouse is disabled differ significantly from those used to determine whether a wage earner is entitled to disability benefits. *Id.* 496 U.S. at ——, 110 S.Ct. at 2661. While in the case of a wage earner the Secretary follows a "five-step sequential evaluation process" to determine disability, *see Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987), a surviving spouse is deemed disabled only if the spouse suffers from a physical or mental impairment sufficiently severe to meet or equal an impairment included in the Secretary's Listing of Impairments in Appendix 1, 20 C.F.R. pt. 404, subpt. P, step 3 of the five-step process. In other words, the Secretary stops at step 3 in the evaluation process in the case of surviving spouses and makes no determination whether, considering the person's age, education, and work experience, the person's impairment allows for substantial gainful employment, as is done for wage earner claimants.

The District Court's remand order was unquestionably a "judgment", as it terminated the civil action challenging the Secretary's final determination that respondent was not entitled to benefits, set aside the determination, and finally decided that the Secretary could not follow his own regulations in considering the disability issue. Furthermore, should the Secretary on remand undertake the inquiry mandated by the District Court and award benefits, there would be grave doubt, as the Court of Appeals recognized, whether he could appeal his own order.

496 U.S. at ——, 110 S.Ct. at 2664. The Court rejected claimant's contention that the district court's order was, in fact, a sentence six remand order, noting that "[t]he sixth sentence of § 405(g) plainly describes an entirely different kind of remand, appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Id.* Finally, the Court distinguished *Finkelstein* from *Hudson* by noting that the concern in *Hudson* was with the interpretation of the term "any civil action" in the EAJA and not with the appealability of a remand order under 28 U.S.C. § 1291. 496 U.S. at ——, 110 S.Ct. at 2666; however, the Court did restate its conclusion in *Hudson* that administrative proceedings on remand should be considered part of the civil action for EAJA fee purposes. *Id.*

Last term, in *Melkonyan v. Sullivan,* the Court again dealt with the issue of EAJA attorney fees in the Social Security benefits determination context, this time focussing on the question "whether an administrative decision rendered following a remand from the District Court is a 'final judgment' within the meaning of the EAJA." 111 S.Ct. at 2159. Here, while claimant's case was before the district court on cross-motions for summary judgment, the Secretary requested that it be remanded to the Appeals Council so that it could be reconsidered in light of new evidence.[6] After initially resisting remand, claimant eventually moved the court to either decide the case on the merits or remand the action to the Secretary. The district court did the latter, entering a judgment remanding the case to the Secretary "for all further proceedings." 111 S.Ct. at 2160. One month later, the Appeals Council found claimant disabled from the date of his first application; however, it was more than one year after this determination that claimant submitted his EAJA fee application. It was to this latter circumstance that the Supreme Court addressed itself.

The Court first resolved that a "final judgment," which triggers the thirty-day time period for filing an EAJA fee application, must be one entered by a court of law and could not include decisions rendered by the administrative agency. *Id.* 111 S.Ct. at 2161–62.[7] Based on this finding, and referring to the *Hudson* and *Finkelstein* decisions, the Court reasoned:

> *Hudson* thus stands for the proposition that in those cases where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level. *Ibid.* "We did not say that proceedings on remand to an agency are 'part and parcel' of a civil action in federal district court for all purposes...." *Sullivan v. Finkelstein, supra,* 496 U.S. at ——, 110 S.Ct. at 2666–67.

111 S.Ct. at 2162. The Court in *Melkonyan* went on to note that no final judgment had been entered by the district court and, in order to determine whether either party could return to the court to do so, it

---

6. This new evidence resulted from claimant filing a second application for disability benefits under the Supplemental Security Income ("SSI") program established by Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383d. This second application, containing new evidence of her disability, provided the basis for the Secretary's remand request.

7. The Court also noted that the thirty-day clock actually starts to run after the time to appeal the "final judgment" has expired, thus applying the 1985 amendments to the EAJA, which added a definition of "final judgment" to section 2412.

would have to be determined which type of remand—under sentence four or sentence six—was contemplated by the lower court. After reviewing its *Finkelstein* analysis of the two types of section 205(g) remands and citing both the plain language of the statute and its legislative history, the Court declared that these two types of remands were the only possible alternatives Congress authorized under section 205(g) and that all remand orders "must either accompany a final judgment affirming, modifying, or reversing the administrative decision in accordance with sentence four, or conform with the requirements outlined by Congress in sentence six." *Id.* 111 S.Ct. at 2164–65. The Court then set forth at what point the applicable EAJA filing period commenced for both sentence four and sentence six remands.

> In sentence four cases, the filing period begins after the final judgment ("affirming, modifying, or reversing") is entered by the court and the appeal period has run, so that the judgment is no longer appealable. See § 2412(d)(2)(G). In sentence six cases, the filing period does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs.

*Id.* 111 S.Ct. at 2165. Nevertheless, rather than applying the standards just enunciated to the facts of the case, the Supreme Court vacated the Court of Appeals decision and remanded the case to the district court noting that it could not "state with certainty" that the remand was, indeed a sentence six remand, as claimant argued, or was treated by the lower court as a Fed.R.Civ.P. 41(a) voluntary dismissal, notwithstanding the failure of the parties to file a signed stipulation, a requirement of Rule 41. *Id.* Deciding this issue would then determine whether plaintiff's application for EAJA fees was timely or not.

The factual scenario in the matter before us most closely resembles the situation in *Hudson.* In both cases, the courts ruled that the Secretary had not followed the agency's own regulations in making the claimants' disability determinations. The cases were remanded to the Secretary to reconsider his earlier decisions in light of the court ruling and to conduct whatever further proceedings were necessary to render a final decision. Unlike the facts in *Finkelstein,* both here and in *Hudson,* none of the Secretary's regulations were invalidated; nor were these cases remanded prior to a ruling on the merits as the district court did in *Melkonyan.* In fact, the basis for remand of the Secretary's decision found both here and in *Hudson* represents the usual situation confronting a district court in making the determination whether the Secretary's decision was based on substantial evidence.

The difficulty facing us is our inability to reconcile the rationale of *Hudson* with the findings of *Melkonyan.* The language of *Melkonyan* seems to imply that a district court's power to remand a Social Security case to the Secretary under section 205(g) is limited to either a remand accompanying a judgment where the Secretary's decision is modified or reversed or remanding for the taking of further evidence upon a showing that there is new evidence which is material and that there exists good cause for failing to incorporate the evidence in the prior proceeding. The Court in *Melkonyan* seems to no longer allow for the retention of jurisdiction by the district court in cases where, although it rules on the merits, the court contemplates further judicial review after the Secretary has conducted additional administrative proceedings pursuant to the court's remand order. Without overruling *Hudson,* the Court seems to have undermined its logic in *Melkonyan.* For the purpose of filing a timely EAJA application, it would seem that, in the sentence four remand context, a claimant would have to file his or her fee application within thirty days after the district court judgment is no longer appealable— sixty days after its entry—and then wait until the administrative proceedings on remand are completed to determine whether plaintiff is a "prevailing party" for EAJA fee purposes. This is the position argued by the government in their brief and does suggest one way of reconciling the Supreme Court decisions in *Hudson, Finkelstein,* and *Melkonyan.*

Lower courts that have examined the issues before us in light of *Melkonyan*—(a)

whether a district court remand order falls under sentence four or sentence six; and (b) based on the decision in (a), when a final judgment must be entered in order to trigger the filing period for EAJA fee applications—have responded in various ways. Two Circuit Courts of Appeal have reconciled *Hudson* and *Melkonyan* by finding that the Supreme Court has recognized "a subcategory of cases in which the district court makes a fourth sentence remand but intends to retain jurisdiction over the action pending further administrative proceedings and enter a final judgment after those proceedings are completed." *Gutiérrez v. Sullivan*, 953 F.2d 579, 584 (10th Cir.1992); *Welter v. Sullivan*, 941 F.2d 674, 675 (8th Cir.1991) (district court remand order not a final "judgment" under sentence four which enables court to retain jurisdiction). The Seventh Circuit also ruled that a district court order remanding the action to the Secretary for further proceedings [8] was not a sentence four remand since the judgment neither affirmed, modified nor reversed the ALJ's decision.[9] *Damato v. Sullivan*, 945 F.2d 982, 986–987 (7th Cir. 1991). In a footnote, the court in *Damato* also questioned, based on the reasoning of *Melkonyan*, whether the district court possessed the authority to remand to the Secretary; however, the court resolved the issue by finding that since the Secretary had acquiesced to the remand order, the issue of the district court's authority to enter the order was not before the court. 945 F.2d at 987 n. 3.[10] The Fifth Circuit has taken the contrary position and ruled that the initial remand order constituted the "final judgment," ending plaintiff's federal court action and triggering the EAJA filing period. *Luna v. United States HHS*, 948 F.2d 169 (5th Cir.1991); *Frizzell v. Sullivan*, 937 F.2d 254 (5th Cir.1991). Notwithstanding this ruling, the *Luna* court found that plaintiff should be given the benefit of equitable tolling and be allowed to file an EAJA fee application since: the district court's remand order purported to retain jurisdiction; the *Frizzell* decision clarifying the law on the issue was not entered until four months later; and the fact that the Secretary acquiesced to the remand order all favor tolling the period to file EAJA fees. *Luna* 948 F.2d at 173.[11] Finally, the Fourth Circuit, in an unpublished opinion, decided not to apply *Melkonyan* and *Finkelstein* retroactively to the facts of the case before it and allowed the untimely-filed application for attorney fees. *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.1991) (unpublished opinion).

District courts from other circuits have also made varied rulings with respect to these issues. In *Dow v. Sullivan*, 774 F.Supp. 46, 48 (D.Me.1991), the court found that the EAJA fee application was time-barred since the magistrate's recommendation to reverse the Secretary's determination fell under sentence four of § 205(g) even though, on remand, the Secretary will have to make a step-five determination. *Accord Adair v. Sullivan*, Civil No. 89–2321, 1991 WL 274236, 1991 U.S. Dist. Lexis 18507 (D.N.J. Dec. 17, 1991). The *Dow* court also noted that *Hudson* was not to the contrary, since *Hudson* involved a sentence six remand.[12] Another court inter-

---

**8.** In fact, the district court remanded based on the magistrate's recommendation and report, a fact that we think is of no consequence to our present discussion. *Damato*, 945 F.2d at 982.

**9.** The court in *Damato*, rather than determining whether the remand was under sentence six, ruled that the Secretary's position was substantially justified and that there could, therefore, be no fee award under the EAJA. 945 F.2d at 987–88.

**10.** We also note a more recent decision by a different panel of the Seventh Circuit categorizing a district court remand as a "sentence six" remand based on new evidence, even though plaintiff did not comply with all of the sentence six requirements and the district court had also suggested the Secretary hear the testimony of a vocational expert. *Cummings v. Sullivan*, 950 F.2d 492, 498 (7th Cir.1991).

**11.** We also note that in *Luna*, the court cited a decision by a different panel of the Fifth Circuit, issued after *Frizzell*, where the court found that no final judgment had been entered and that the EAJA fee application was, therefore, premature. *Tanner v. Secretary of HHS*, 932 F.2d 1110 (5th Cir.1991), and Order of October 7, 1991 (unpublished). *Luna*, 948 F.2d at 172.

**12.** The court in *Dow* cited a footnote from the First Circuit opinion *Trinidad v. Secretary of HHS*, 935 F.2d 13, 16 n. 2 (1st Cir.1991), where the court refers to a Northern District of Illinois decision suggesting that *Hudson* involved a sen-

preted *Melkonyan* narrowly and, using the reasoning of *Hudson,* found that district courts may still remand under sentence four while retaining jurisdiction and enter the final judgment after the post-remand administrative proceedings. *Linkins v. Sullivan,* 779 F.Supp. 1324 (M.D.Fla.1991). In *Audette v. Secretary of HHS,* 776 F.Supp. 84 (D.R.I.1991), the court found that, although the First Circuit's order remanding the case to the Secretary—despite its ambiguous language [13]—was a sentence four remand, the decision in *Melkonyan* has changed the definition of "prevailing party" for EAJA fee purposes so that now, a sentence four remand, ending the civil action, will constitute sufficient litigation success to allow plaintiff to be considered a "prevailing party" and, therefore, entitled to apply for attorney fees under the EAJA even before the subsequent administrative determination is made. Another court has simply "declared" that its pre-*Melkonyan* remand was, in fact, a sentence six remand. *Hudson v. Sullivan,* 779 F.Supp. 37, 39 (W.D.Pa.1991).

Our detailed review convinces us that these issues will be the subject of further appellate court clarification. The Tenth Circuit's resolution in *Gutiérrez,* finding that the Supreme Court carved out a subcategory of sentence four remands where the district court would retain jurisdiction pending further administrative proceedings, does provide one way of reconciling *Hudson* and *Melkonyan.* This solution recognizes that the vast majority of district court remands, while not conforming to the explicit mandates of sentence six, also do not represent sentence four "judgments" reversing the Secretary's decision. Since the Secretary has developed a five-step sequential process to make its disability determinations, *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987), a decision to remand like the

one made here—so that the Secretary could evaluate further evidence in making a step-four determination—does not reverse the Secretary's decision, but simply orders the Secretary to continue the five-step evaluation process. If, for example, the Secretary rules that plaintiff cannot return to her former employment, the Secretary will go on to make a step-five determination. Allowing the district court to retain jurisdiction under such circumstances makes sense, as the Supreme Court in *Hudson* acknowledged, since the court is usually correcting legal or factual errors and will not make a "final" decision—determining whether substantial evidence exists in the record for the Secretary's decision—until these errors have been corrected and the Secretary's regulations are properly applied.

Also, following *Melkonyan's* reasoning to its logical end could result in the filing of various federal court actions involving the same disability claim. If, for example, a court remand, finding that the Secretary's step-four determination is not based on substantial evidence, ends the civil action, then a second court would have to review a further challenge to the Secretary's subsequent determination. This seems to create a costly and inefficient use of already-scarce judicial resources. On the other hand, allowing the claimant to return to the same district court, already familiar with the record and with the nature of its own orders, would seem to promote a speedier, more efficient approach in reviewing Social Security disability claims.

However, we think that the Seventh Circuit's discussion in *Damato,* questioning the power of a district court to remand other than as *Melkonyan* dictates, challenges the reasoning of *Gutiérrez.* If a court's remand must comport with either sentence four or sentence six, then the

tence six remand. *See Wilson v. Sullivan,* 751 F.Supp. 1281, 1284–85 & n. 2 (N.D.Ill.1990). Based on our reading of *Hudson,* we are not as convinced as the *Dow* court that the remand in *Hudson* was in fact a sentence six remand as it has been subsequently defined by *Finkelstein* and *Melkonyan. See Gutiérrez,* 953 F.2d at 584 (finding that the remand in *Hudson* was not a sentence six remand, and concluding that, un-

der *Melkonyan,* it must have been a sentence four remand).

**13.** The First Circuit's order provided: "we remand the case with the understanding that the Secretary will either find disability or reopen the proceeding to take additional evidence." 776 F.Supp. at 88.

discussion in *Hudson* cited above, where the court envisioned post-remand administrative proceedings as part and parcel of the federal court action, no longer represents the position of the Court. Yet, the Court in *Melkonyan* neither overruled nor distinguished the reasoning of *Hudson.* Since we think that *Hudson* was a sentence four remand, its reasoning remains good law. In any case, like the situation in *Damato,* here the Secretary acquiesced in the remand order and did not challenge it on appeal.

██ We also decline to adopt the government's position that the EAJA fee application must be done in two stages, with the initial filing made after the district court's remand order and the actual fee determination deferred until after the conclusion of the subsequent administrative proceedings and the award of benefits. Nor do we adopt the position of the court in *Audette* which reads *Melkonyan* as redefining the meaning of what constitutes a "prevailing party" in the sentence four remand context. This court cannot imagine the Supreme Court making such sweeping changes in its interpretation of "prevailing party" jurisprudence or in the creation of a two-stage EAJA attorney fee application process without the Court explicitly saying that it was doing so. Rather, we agree with Judge Wright of the United States District Court for the Western District of Missouri who was faced with the same issues as those before us. *Sesker v. Sullivan,* 779 F.Supp. 1042 (W.D.Mo.1991). After noting that the difficult issues confronting district courts after *Melkonyan* were "not contemplated by Justice O'Connor", Judge Wright opines: "This court notes that the *Welter* [and *Gutierrez* ] decision may provide an interim solution, but the dilemma created by the *Melkonyan* decision will remain until the Supreme Court issues another opinion." *Id.* at 1044. We agree with Judge Wright and will likewise make our rulings recognizing that the last word has not been spoken with respect to these issues.

██ We, therefore, rule as follows:

1. Our remand in this case was a sentence four remand.

2. Pursuant to the reasoning found in *Hudson* and the holding of *Gutiérrez,* we retained jurisdiction of the case until the Secretary would make his post-remand determination as to plaintiff's application for disability benefits.

3. The Secretary has now made his final decision and granted plaintiff benefits.

4. Accordingly, we GRANT plaintiff's motion for an issuance of a final judgment and, in a separate document, will enter judgment pursuant to Fed.R.Civ.P. 58.

5. Because the decision in *Hudson* allows plaintiff to include the work done by counsel in the subsequent administrative proceedings, we ORDER plaintiff to file a new application for EAJA attorney fees in a timely fashion—within thirty (30) days after the judgment entered by this court is final and unappealable. The Secretary will then have fifteen (15) days from the date of plaintiff's filing to file an opposition to the fee application. The court will then rule on the merits of the attorney fee application.

IT IS SO ORDERED.